UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATATIAOU ERGAS,
Individually and on behalf of all others similarly
situated,

                          Plaintiff,

     v.

EASTPOINT RECOVERY GROUP, INC.,
UNITED HOLDINGS GROUP, LLC,

                          Defendants.
_____

**DECISION
and
ORDER**

**20-CV-333Sk(F)**

APPEARANCES:         BARSHAY SANDERS PLLC
                         Attorneys for Plaintiff
                         CRAIG B. SANDERS, of Counsel
                         100 Garden City Plaza
                         Suite 500
                         Garden City, New York 11530

                         LIPPES MATHIAS WEXLER FRIEDMAN LLP
                         Attorneys for Defendant
                         SEAN M. O'BRIEN,
                         CHRISTINA M. PIRACCI,
                         CARMEN A. VACCO, of Counsel
                         50 Fountain Plaza
                         Suite 1700
                         Buffalo, New York  14202

       In this action alleging violations of the Fair Debt Collections Practices Act, 15

U.S.C. § 1692 *et seq.* ("FDCPA"), by papers filed February 19, 2021, Plaintiff moves,

pursuant to Fed.R.Civ.P. 26(c) ("Rule 26(c)___"), for a protective order to prevent

enforcement of a subpoena[1] issued January 29, 2021 by Defendant East Point

_____

[1]  Motions for a protective order and to quash a subpoena are non-dispositive.  *See Caidor v. Onondaga County*, 517 F.3d 601, 602-03 (2d Cir. 2008) (protective orders); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (motion to quash a subpoena).

Recovery Group, Inc. ("East Point" or "Defendant")[2] upon a non-party (Dkt. 35) ("the subpoena" or "Defendant's subpoena"), together with Plaintiff's Memorandum of Law in Support (Dkt. 35-1) ("Plaintiff's Memorandum"), ("Plaintiff's motion" or "Plaintiff's Motion for Protective Order"); Plaintiff's motion also requests the subpoena be quashed. Defendant Eastpoint filed its opposition on March 9, 2021 (Dkt. 38) ("Defendant's Opposition").  By papers, also filed February 19, 2021, Defendant moves, pursuant to Fed.R.Civ.P. 37(a) ("Rule 37(a)__"), to compel Plaintiff's answers to Defendant's interrogatories and production of documents in response to Defendant's requests for document production served December 17, 2020 (Dkt. 36) ("Defendant's Discovery Requests" or "Discovery Requests") ("Defendant's motion").  Plaintiff's opposition to Defendant's motion was filed March 10, 2021 (Dkt. 39) ("Plaintiff's Opposition"). Defendant's Memorandum in Further Support of Defendant's Motion was filed March 17, 2021 ("Defendant's  Reply") (Dkt. 40).  Oral argument on both motions was conducted March 25, 2021 (Dkt. 42) and decision reserved.  With permission of the court, Defendant filed a Supplement Brief on April 5, 2021 (Dkt. 45); Plaintiff's Supplemental Brief was filed April 8, 2021 (Dkt. 46).

Plaintiff's claims are based on an August 4, 2019 letter sent by East Point to Plaintiff stating that Plaintiff owed a debt of $9,691.08 ("the debt"), listing Defendant United Holdings Group, LLC ("UHG") as the then current owner of the debt which East Point was attempting to collect from Plaintiff ("the August 4, 2019 Letter").  According to Plaintiff, the August 4, 2019 Letter constitutes a misrepresentation prohibited by and actionable pursuant to the FDCPA in that the debt was not then owned by Defendant

---

[2]   A default was entered against Defendant United Holdings Group, LLC ("Defendant UHG") on November 19, 2020 (Dkt. 27).

UHG.  Dkt. 35-1 at 2.  Plaintiff incurred the debt, a fact not directly denied by Plaintiff, through Plaintiff's use of a credit card issued to Plaintiff by Pentagon Federal Credit Union ("PenFed") to make two payments of $4,500 to an entity called Soimach Rely and Support, LLC, a non-party, located in Monroe, New York ("Soimach"), on February 21, and 22, 2018, respectively, a payment of $180 to Congregation Yetev Lev D'Satmar ("the Congregation"), and $360 to a retail optical business.  Defendant's Discovery Requests are directed to the nature of Soimach's and Congregation's business and the purpose of Plaintiff's payments to these organizations using the PenFed credit card. Plaintiff's deposition was held January 21, 2021, at which in response to Defendant's questioning Plaintiff was unable to recall the two $4,500 payments to Soimach, a term which, according to Plaintiff, means "to pick people up that fall down," Dkt. 46 (Plaintiff's Supplement Brief) at 2.  Plaintiff was also questioned regarding the $180 payment to the Congregation but that portion of the deposition transcript was not included in the record. *See* Dkt. 38-3 at 4-7 (*passim*).  No further information regarding Soimach is provided in the record.

Following the filing of Defendant's motion on February 19, 2021, on March 4, 2021 Plaintiff served responses to Defendant's discovery requests ("Plaintiff's responses") which Defendant has not asserted are insufficient requiring relief from the court, *see* Dkt. 40 at 5 n. 5.  Accordingly, Defendant's motion presently seeks only an award of Defendant's expenses as a sanction pursuant to Rule 37(a)(5)(A) requiring sanctions where discovery is provided after filing of motion to compel moving party shall be awarded its expenses incurred in connection with motion including reasonable attorneys fees unless the responding party's failure to provide discovery timely was

substantially justified or an award of sanctions would be unjust.  Notwithstanding that Defendant does not further challenge the sufficiency of Plaintiff's belated responses, particularly Plaintiff's answers to Defendant's interrogatories that Plaintiff's two $4,500 payments to Soimach ("the payments") were "charitable in nature," Dkt. 38-6 at 7, or Plaintiff's response that he lacks possession of responsive documents relating to these interrogatories (Dkt. 38-6 ¶¶ 6-9), Defendant's subpoena seeks more detailed information from Soimach regarding the exact nature of Soimach's business and the payments as relevant to the "threshold element," Dkt. 45 at 2, of Plaintiff's claim, that is whether the entire debt Defendant seeks to collect in the August 4, 2019 Letter qualifies as a consumer debt, the collection of which is one within the FDCPA's definition under 15 U.S.C. § 1692a(5) ("§ 1692a(5)") and thus actionable under the FDCPA as Plaintiff alleges.  Therefore, for the purposes of determining the merits of Plaintiff's motion, the court need only determine whether the subpoena requests information constituting a privilege or a valid personal interest which may be asserted by Plaintiff to prevent compliance with the subpoena sufficient to provide Plaintiff, as one who is not the recipient of the subpoena, with standing, as discussed, *infra*, to request a protective order or an order quashing the subpoena.  Here, Soimach, the recipient of the subpoena, has neither objected to the subpoena in accordance with Fed.R.Civ.P. 45(d)(2)(B), moved for a protective order pursuant to Fed.R.Civ.P. 26(c)(1) ("A party <u>or any person</u> from whom discovery is sought may move for a protective order in the court where the action is pending . . ..") (underlining added), nor moved to quash pursuant to Fed.R.Civ.P. 45(d)(3).

(1)    <u>Plaintiff's Motion for a Protective Order and/or To Quash</u>.

It is settled law that a party generally lacks standing to object, by motion for a protective order or to quash, to a subpoena for document production from a non-party unless the moving party is seeking to protect a personal right or privilege in the documents sought.  *Doe v. Town of Greenwich*, 2020 WL 2374990, at *1 (D.Conn. April 21, 2020) (citing *Langford v. Chrysler Motors Corp*., 513 F.2d 1121, 1126 (2d Cir. 1975) (privilege)); *Strike 3 Holdings, LLC v. Doe*, 337 F.Supp.3d 246, 252 (W.D.N.Y. 2018) (personal right based on First Amendment right to preserve anonymity from disclosure by defendant-user's internet service provider provides standing to defendant to quash subpoena (citing caselaw)).  However, an objection based on lack of relevance or burdensomeness may be raised by the recipient of the subpoena, but not a party.  *See Doe*, 2020 WL 2374990, at *2 (citing *United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, 2018 WL 2172713, at *8 (D.Conn. May 10, 2018)); *see also Strike 3 holdings, LLC*, 337 F.Supp.3d at 251 (party lacks standing to quash a non-party subpoena unless "'party seeks to protect a personal right or privilege'") (quoting *Nora Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004)).  Additionally, a protective order pursuant to Rule 26(c)(1) requires good cause which requires a showing that "disclosure will cause a clearly defined and serious injury."  J. Moore, D. Coquillette, G. Joseph & G. Vario, 6 Moore's Federal Practice § 26.104[1] (3d ed. 2017).  To establish Plaintiff's standing to request a protective order or an order to quash the subpoena, Plaintiff does not assert compliance by Soimach with the subpoena would disclose privileged information.  Rather, Plaintiff asserts Plaintiff has a

personal interest, based on considerations peculiar to the Hassidic Jewish community where Plaintiff lives, that would be compromised by Soimach's compliance.

Specifically, Plaintiff submits that as Plaintiff and his brother, a principal of Soimach, reside in a small, tightly-knit religious, Jewish Hassidic, community ("Plaintiff's community" or "the community"), that compliance by Soimach would cause Plaintiff embarrassment based on its "ripple effect," Dkt. 41 at 4, of revealing the instant lawsuit to members of Plaintiff's community causing them to "inquire into Plaintiff's personal matters," thereby demonstrating the subpoena was issued by Defendant to harass and embarrass Plaintiff and intimidate his brother.[3]  Dkt. 41 at 3-4; Dkt. 35-1 at 4-5.  Plaintiff further asserts that absent the requested protective order or quashing the subpoena, Plaintiff's fellow members of the community will learn of Plaintiff's alleged debt and the knowledge of Plaintiff's lawsuit and the subpoena thus gained by Plaintiff's community members will subject Plaintiff to ridicule and deter Plaintiff's community members from "engaging in any transactions with him – as is common within such communities."  Dkt. 41 at 6.  Plaintiff points to no authority to support Plaintiff's theory of a sufficient personal interest to support Plaintiff's standing.  Even assuming the existence of such authority, Plaintiff's contention in support of Plaintiff's standing to contest the subpoena, by the requested protective order or an order quashing the subpoena, based on Plaintiff's assertions of a sufficient personal interest based, in this case, on Plaintiff's privacy concerns as alleged by Plaintiff fails for several reasons.

First, as can be discerned from an inspection of the subpoena, Dkt. 38-4 at 9-10, nothing in the subpoena requires either Soimach, Plaintiff, or his brother, to reveal to

---

[3]  It is unclear from the record whether Soimach's business offices are also located in the community.

other persons, particularly including other members of Plaintiff's community, the
existence of Plaintiff's PenFed credit card debt and Plaintiff's use of the credit card,
Defendant's collection efforts including the August, 4, 2019 Letter, the purpose or
content of the subpoena seeking details of Plaintiff's payments to Soimach, or the
instant lawsuit, nor does Plaintiff demonstrate compliance with the subpoena which
requests copies of Soimach's articles of organization and operating agreement,
Plaintiff's brother, Joseph Ergas's corporate duties and financial contributions to the
corporation, identification of Plaintiff's relationship to Soimach, and information
regarding the nature and purpose of the payments will be made public by Soimach's
compliance and production to Defendant.  Further, Plaintiff does assert that Defendant
has engaged in activity calculated to inform Plaintiff's community members of Plaintiff's
lawsuit or the subpoena.  Thus, it is fair to conclude that any potential adverse effect
upon Plaintiff's or his brother's standing in the community that conceivably may arise
from the service of, or Soimach's compliance with, the subpoena as Plaintiff claims
must necessarily result, not from such service or compliance, but from Plaintiff's, or his
brother's, disclosure of such information to others.

      Further undermining Plaintiff's contention is that Plaintiff's assertions of
Defendant's purpose to harass or intimidate Plaintiff and his brother, or the putative risk
of public embarrassment as Plaintiff states, by Defendant's issuance of, or Soimach's
compliance with, the subpoena appear solely in Plaintiff's supporting memoranda, and
do not include sworn statements in support of Plaintiff's assertions by Plaintiff or on
behalf of his brother.  *See Jordan v. Domino's Pizza, Inc.*, 2017 WL 1076541, at *6
(W.D.N.Y. Jan. 9, 2017) (excluding from consideration on summary judgment, *inter alia*,

unsworn response raising issues of facts beyond those alleged in the complaint), *report and recommendation adopted*, 2017 WL 1078675 (W.D.N.Y. Mar. 21, 2017). Nor, in support of Plaintiff's assertions, does Plaintiff proffer anything such as sworn affidavits of Plaintiff's community members attesting to the accuracy of Plaintiff's assertions of social embarrassment and other potential types of shunning as Plaintiff also claims, who have become, without explanation by Plaintiff, aware of or interested in Plaintiff's or his brother's personal legal affairs as a result of the subpoena. Plaintiff's assertions regarding Plaintiff's alleged embarrassment and social shunning from Soimach's compliance with the subpoena is therefore without sufficient factual basis. Although the Second Circuit has recognized a limited right to privacy that may be subject to protection against disclosure pursuant to a subpoena, *see Arista Records, LLC,* 604 F.3d at 119 (assertion that disclosure of an internet user's identity resulting from a subpoena issued to the user's ISP warranted in copyright infringement case insufficient to avoid ISP's compliance with subpoena) ("*Arista*"), Plaintiff does not contend he enjoys a protectable First Amendment right, such as anonymity, as in *Arista*, or freedom of association, that warrants quashing the subpoena or granting a protective order. Nor does Plaintiff claim a violation of his legitimate privacy interests in avoiding Plaintiff's community's awareness of his lawsuit if the subpoena is not quashed. The court therefore fails to see how the issuance of or compliance with the subpoena by Soimach could violate any cognizable personal right of Plaintiff or in fact adversely affect Plaintiff's reasonable expectation of privacy like the claimed anonymity of an internet user rejected in *Arista* as unprotectable to avoid disclosure of defendant's identity as an internet-user plausibly accused of violating a copyright. *See Strike 3 Holdings*, 337

F.Supp.3d at 252.  As is obvious in this case, any privacy interests that Plaintiff could conceivably be entitled to protect are also greatly diminished given that Plaintiff initiated the action, in itself a matter of public concern.  *See In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (waiver of privilege may be implied where circumstances call for such waiver in the interests of fairness; a party may not rely on a privilege as both "a shield and a sword" (internal citation omitted)); *Swinton v. Livingston County*, 2018 WL 4637376, at *15 (W.D.N.Y. Sept. 27, 2018) (plaintiff, by commencing action seeking damages for denial of medical treatment, placed relevant medical condition at issue and waived any right to privacy otherwise applicable to his medical records).  Moreover, Plaintiff does not dispute he is in default and owes the debt.  *See* Plaintiff's Memorandum, Dkt. 35-1 at 4 ("the gravamen of the FAC alleges that Plaintiff owes no monies of any kind to UHG – regardless of whether he owes any money to PenFed.") (underlining added).   Thus, Plaintiff's proffered assertions to establish a protectable privacy interest to create a basis for Plaintiff's standing to bring Plaintiff's motion, are without substance and insufficient.  Additionally, in the absence of any such protectible personal interest, Plaintiff's motion fails to demonstrate good cause to prevent "clearly defined and serious injury" as required for a protective order by Rule 26(c).  *See, supra*, at 5.

Even assuming Soimach had timely objected to the subpoena asserting lack of relevancy, such objection would also be without merit.  Specifically, Plaintiff contends that the subpoena seeks information intended to assist Defendant in establishing that the debt is outside the definition of a consumer debt as defined by the FDCPA, 15 U.S.C. § 1692a(5) ("§ 1692a(5)") based on the majority of the debt being the two $4,500 payments to Soimach and that as there is at least one (the $360 charge for optical

services) such charge within the outstanding debt Defendant is attempting to collect within the FDCPA's definition of a debt subject to its provisions, the subpoena, directed to the payments by Plaintiff to Soimach, requests irrelevant information.  Section 1692a(5) defines a debt for FDCPA purposes as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  Courts have thus held that to qualify as a debt subject to FDCPA protection such actions brought under the FDCPA must "concern consumer debts" . . . . "while 'actions arising out of commercial debts are not covered by the FDCPA.'"  *Billie v. Credit Collection Services, Inc.*, 2017 WL 396536, at *2 (D.Conn. Jan. 1, 2017) (quoting *Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006)).  In making this determination, courts consider all "information regarding the nature of the debt," *Valcin v. Prestige Directors, LLC*, 2015 WL 12670378, at *3 (E.D.N.Y. Dec. 7, 2015), including the "'purpose for which the credit was extended,'" *id.*, at 4 (quoting *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (underlining in original)), and "'examine the transaction as a whole,'" *id.*, as well as "'the consumer's purpose.'"  *Id.* (quoting *Ernst v. Berson Associates, Ltd.*, 1994 U.S.Dist. LEXIS 21653, at *5-6, (E.D.N.Y. Aug. 15, 1994)).  *See also Nicolaides v. Divine and Service, Ltd.*, 382 F.Supp.3d 251, 256-57 (E.D.N.Y. 2019) (consumer's actual "use" of credit card funds constituting the alleged debt relevant to determination of whether debt at issue is within FDCPA's definition).  Where the debt was not incurred "primarily for personal, family, or household purposes," it is not a consumer debt covered by § 1692a(5).  *Scarola Malone & Zubatov LLP v. McCarthy Burgess & Wolff*, 638 Fed.Appx. 100, 102 (2d Cir. 2016)

(underlining added).   Importantly, Plaintiff has the burden of proving the debt Defendant seeks to collect is within the statutory definition.  *Powers v. Kearns, Brinen & Monaghan, Inc.*, 2015 WL 8678378, at *3 (W.D.N.Y. Dec. 11, 2015) (plaintiff has burden to establish debt is within FRCPA's definition).

More particularly, with regard to the instant action, the Second Circuit has held that to come within the FDCPA definition, a debt must have "'arisen as a result of a rendition of a service or purchase of property or other items of value,'" *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) ("*Beggs*") (holding credit card debt for payment of personal property tax not within FDCPA) (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980).  Where a plaintiff incurs a debt in order to loan the cash proceeds to another, the plaintiff has not used the proceeds for personal purposes as the plaintiff has not received any services or product in return and accordingly the debt is not within the scope of § 1692a(5).  *See Noe v. Chastain*, 2019 WL 1560464, at *3 (W.D.Mo. Apr. 10 2019) (dismissing action where plaintiff borrowed money from defendant as a loan to refinance purchase of property used for charitable purposes did not constitute money used by plaintiff for "personal, family or household purposes.").  As the Second Circuit in *Beggs* observed, where the "'relationship between . . . [debtor] and . . . [the recipient of the cash proceeds of the debt] does not encompass that type of *pro tanto* exchange which the statutory definition envisages,'" the debt is not actionable under the FDCPA. *Beggs*, 145 F.3d at 512 (quoting *Staub*, 626 F.2d at 278) (italics in original)).  Thus, for example, if the discovery documents sought by Defendant's subpoena indicates Plaintiff's payments to Soimach were a loan to assist Soimach in its business operations, even if "charitable in nature," or a donation to assist in promotion of

11

Soimach's alleged charitable, purposes as Plaintiff stated, in either case Plaintiff would not have received in "exchange" for such payment *Beggs*, 145 F.3d at 512, "'a rendition of a service or purchase of property or other item of value,'" *id*., thereby rendering problematic whether the debt at issue in this case qualifies for protection under the FDCPA.  Similarly, courts have held debt transactions for investments involving investments are not consumer debt within § 1692a(5).  *See Sanchez v. Blustein, Shapiro, Rich & Barone*, LLP, 2014 WL 7339193, at *8 (S.D.N.Y. Dec. 23, 2014) (dismissing pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim FDCPA claim where the facts pleaded in the complaint established the subject debt was for "business expenses accrued by corporate entities that Plaintiff used as investment vehicles"). Given that in deciding this aspect Plaintiff's motion the court is resolving only the issue of the relevancy of the information sought by the subpoena, it need not address whether a debt, like that at issue in this case, which includes both a consumer, as well as a potential commercial, *i.e.,* non-consumer, debt, is within the scope of § 1692a(5), the court therefore finds the subpoena seeks relevant information from Soimach regarding the purpose and nature of the payments Plaintiff made to Soimach in February 2018 that will aid in determining on summary judgment or at trial, whether the payments to Soimach were for a commercial or consumer purpose within the scope of § 1692a(5). Whether, assuming the payments as the predominant portion of the debt sought to be collected by Defendant disqualify, despite the inclusion of the $360 payment for the apparent consumer debt, the entire debt as outside the definition of § 1692(5) from serving as the basis for Plaintiff's claims also, for the same reason, need not be resolved at this time.  Accordingly, even if Plaintiff had standing to assert a lack of

relevancy as an objection to the subpoena or if Soimach had timely, *i.e.*, prior to the return date for the subpoena, *see Est. of Ungar v. Palestinian Authority,* 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006) ("It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena), objected or moved to quash pursuant to Fed.R.Civ.P. 45(d)(2)(B) and (3)(A)(iii), any such motion by Plaintiff or Soimach on this ground would also be without merit.

Finally, with respect to Plaintiff's motion, Defendant requests the court award its expenses incurred by Defendant in opposing what Defendant characterizes as Plaintiff's frivolous motion.  Dkt. 38 at 11 (citing N.Y. Comp. R. & Regs. Tit. 22 § 130-1.1(a)). While this provision may apply in state court proceedings, it lacks applicability in an action in this court.  *See Jewelers Vigilance Committee, Inc. v. Vitale, Inc.*, 1997 WL 582823, at *5 (S.D.N.Y. Sept. 19, 1997) (holding § 130-1.1(a) is a provision of New York State Courts and inapplicable to an attorney's conduct in federal court, where such conduct is governed by Fed.R.Civ.P. 11 and 28 U.S.C. § 1927).  However, under federal law, 28 U.S.C. § 1927 ("§ 1927"), district courts have authority to sanction attorneys who engage in frivolous proceedings "to multiply the proceedings in any case unreasonably and vexatiously."  Here, in opposition to Defendant's request, Plaintiff contends, as noted, Plaintiff's motion was meritorious as Defendant has failed to show, in response to Plaintiff's discovery requests, Defendant has a legal basis for seeking to collect the debt because of an alleged lack of documentation confirming UHG had been properly assigned Plaintiff's debt by PenFed and that Defendant's attempt to subpoena Soimach documents ignores that the debt contains at least one undisputed consumer transaction, the $360 charge for optical services, bringing Plaintiff's action within the

FDCPA's coverage regardless of the fact that Plaintiff's payments to Soimach, constituting the predominant portion of the debt, may not qualify as consumer debts actionable under the FDCPA thus reinforcing Plaintiff's contention that the subpoena is an exercise in legal futility and further demonstrating Defendant's purpose in issuing the subpoena is to improperly harass and embarrass Plaintiff into terminating the lawsuit. Dkt. 41 at 6.  As such, Plaintiff maintains Plaintiff's motion for a protective order or to quash is meritorious, and not frivolous.  However, Plaintiff's contention overlooks caselaw holding that an objection to a non-party subpoena based on relevancy must be asserted by the recipient, not the party, in this case, Plaintiff.  *See Doe*, 2020 WL 2374990, at *2 (citing caselaw); *Woodward v. Afify*, 2017 WL 279555, at *7 (W.D.N.Y. Jan. 23, 2017) ("'In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-arty witness.'" (quoting *Langford v. Chrysler Motors, Corp.*) 513 F.2d 1121, 1126 (2d Cir. 1975))).  Further, Plaintiff's contention ignores caselaw indicating courts employ a comprehensive analysis to determine whether a particular transaction is one of a consumer or commercial nature thus supporting Defendant's need to seek the relevant information for Soimach in light of Plaintiff's ability to do so.  Finally, Plaintiff's position that Defendant's subpoena required Plaintiff's motion in order to protect Plaintiff from embarrassment and social opprobrium within Plaintiff's community is, as the court has found, *supra*, at 6-9, wholly without support in fact or law.  Accordingly, the court finds, based on this record, Defendant's assertion, that Plaintiff's motion was frivolous (Dkt. 38 at 11) warranting sanctions, in accordance with § 1927, is sufficiently colorable to require Plaintiff's further response.

2.    <u>Defendant's Motion for Sanctions</u>.

Defendant's motion requests sanctions based on the fact that Plaintiff's

responses to Defendant's Discovery Requests were served on March 4, 2021, but were

due on January 16, 2021 as required by Fed.R.Civ.P. 34(b)(2) following Defendant's

service on December 17, 2020 (Dkt. 36-1 at 2).  Despite the lack of Plaintiff's

responses, Defendant proceeded, as noted, *supra*, at 3,  with Plaintiff's deposition on

January 21, 2021 given the then forthcoming discovery completion date of January 25,

2021 established by the Scheduling Order.  (Dkt. 36-1 at 2).  Thereafter, the court

granted the parties' request to extend the period for discovery to March 1, 2021 Dkt.

32).  Defendant also communicated with Plaintiff on January 21, 2021 concerning

Plaintiff's overdue discovery responses and was informed by Plaintiff's attorney they

would look into whether Plaintiff's responses had been served but gave Defendant no

assurance regarding such service or Plaintiff's service in the future if Plaintiff

determined the responses had not been served as Defendant asserted.  Dkt. 36-1 at 3.

No such response having then been received from Plaintiff, Defendant thereafter, on

February 8, 2021, by e-mail, again reminded Plaintiff that Plaintiff's responses to

Defendant's Discovery Requests had not been served but received no response from

Plaintiff.  Dkt. 36-2 ¶¶ 12-13; Dkt. 40 at 3, 4.  Although, following Defendant's motion,

Plaintiff's responses were served on March 4, 2021, Defendant at oral argument

reaffirmed that Defendant, notwithstanding Plaintiff's belated responses, was

nevertheless entitled to its expenses incurred in connection with Defendant's motion,

including reasonable attorneys fees, pursuant to Fed.R.Civ.P. 37(a)(5)(A).

Plaintiff's opposition is based on (1) Defendant's motion being untimely, *i.e.*, after the Scheduling Order, Dkt. 23, cut-off date of December 1, 2020 for motions to compel, (2) Defendant failed to comply with Fed.R.Civ.P. 37(a)(1) and Local R.Civ.P. 7(d)(3) requiring genuine good faith efforts to avoid judicial intervention prior to a motion to compel, (3) Defendant proceeded with Plaintiff's deposition on January 21, 2021 without Plaintiff's responses, at which Defendant sought information similar to that requested by Defendant's Discovery Requests particularly concerning the purpose of Plaintiff's payments to Soimach, (4) Defendant failed to inform Plaintiff that without Plaintiff's immediate responses Defendant intended to move to compel, and (5) that the time to complete discovery was enlarged by the court to March 1, 2021 from December 1, 2020 at the parties' request.  Accordingly, Plaintiff asserts Defendant's motion should, instead, be denied and Plaintiff should, instead, be awarded expenses in opposing Defendant's motion.  Dkt. 39 at 7.  There is no merit in Plaintiff's opposition or request for sanctions against Defendant.

First, although the original Scheduling Order (Dkt. 23) required motions to compel be filed by December 1, 2020, based on a January 25, 2021 discovery conclusion date, the Amended Scheduling Order filed January 22, 2021 (Dkt. 32) extended the discovery period to March 1, 2021 but did not provide a motion to compel filing date.  In that circumstance, as there was no cut-off date for motions to compel, Defendant's motion was not untimely under the Amended Scheduling Order which was effective when Defendant's motion was filed on February 19, 2021.  Second, the sequence of counsel's discussions via e-mail relating to the tardiness of Plaintiff's responses, while somewhat abbreviated nevertheless substantially complied with the

prerequisites to motions to compel in accordance with Rule 37(a)(1) and Local Rule

7(d)(3). *See Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 1009, 1019-20 (2d

Cir. 1988) (it is within the district court's discretion of determine whether the parties

have complied with Rule 37(a)(1)'s meet and confer requirement); *Woodward v.*

*Holtzman*, 2018 WL 5112406, at *2 (W.D.N.Y. Oct. 18, 2018) (court has discretion to

determine whether further efforts by counsel to comply with Rule 37(a)(1) meet and

confer requirements would be fruitful or futile). Particularly, here, Defendant sent

Plaintiff's counsel inquiries as to the whereabouts of Plaintiff's responses on two

occasions, January 21, 2021 and February 8, 2021, prior to filing Defendant's motion

approximately ten days later on February 19, 2021. Specifically, after having received

no response from Plaintiff to Defendant's second, February 8, 2021, communication

Defendant filed its motion to compel. The court therefore finds such efforts constitute a

sufficient good faith and sincere effort to avoid judicial intervention in compliance with

Rule 37(a)(1) and the Local Rule. Moreover, contrary to Plaintiff's contention, nothing in

either Rule 37(a)(1) nor Local Rule 7(d)(3) places an onus on the requesting party to

avoid filing a motion to compel by more extensive importuning of the responding party to

obtain overdue responses particularly where, as here, the new discovery completion

deadline of March 1, 2021, established at the parties' request, was imminent.

Moreover, Plaintiff does not claim Plaintiff was unaware the responses were overdue or

that despite Plaintiff failed, without any asserted justification, to provide any assurance

of when the responses would be served in response to Defendant's e-mails as

Defendant maintains. Plaintiff's unexcused indifference to Plaintiff's obligation to serve

more timely responses to the Defendant's Discovery Requests is, on this record,
apparent.

Nor is there any merit in Plaintiff's assertion that Defendant's decision to conduct
Plaintiff's deposition somehow lulled Plaintiff into a false reliance that Plaintiff's
responses were no longer required or somehow constituted a withdrawal of Defendant's
Discovery Requests.  Certainly, Defendant's February 8, 2021 e-mail, 10 days before
filing Defendant's motion and well-after Plaintiff's deposition, should have alerted
Plaintiff this was not the case.  As Defendant stated by its February 8, 2021 e-mail after
the deposition, to Plaintiff's counsel "I <u>still</u> have not received [Plaintiff's] discovery
responses, which were due on January 19, 2021.  Are you going to provide responses?"
Dkt. 36-2 at 8 (underlining added).  Instead of simply responding to Defendant's query,
which common sense would indicate to be reasonably expected in the circumstances
confronting Plaintiff at that time, Plaintiff nevertheless chose for unexplained reasons to
ignore Defendant's second and particularized request leaving Defendant with little
choice except to conclude Plaintiff had no intention of providing the responses absent
being compelled to do so by motion practice.  In these circumstances, Defendant's
motion therefore could hardly have been an unfair surprise to Plaintiff.  Indeed, the
motion could not have surprised Plaintiff as Defendant's Discovery Requests included a
request for Plaintiff's answers to Interrogatories Nos. 6, 7, 8 and 9, requesting Plaintiff
describe the nature of the two $4,500 transactions between Plaintiff and Soimach.  Dkt.
36-4 at 6-7.  Defendant's need for these responses persuasively shown by the fact that
at Plaintiff's deposition Plaintiff testified he lacked any recall about the payments, Dkt.
38-3 at 4, 6, information relevant to the viability of Plaintiff's claim.  Despite Plaintiff's

lack of recall at his deposition regarding this subject, in Plaintiff's answers to Defendant's interrogatories, served March 4, 2021 (after the March 1, 2021 discovery cut-off established by the First Amended Scheduling Order), directed to the same subject, Plaintiff averred the payments to Soimach were "charitable in nature," but provided no further explanation such as whether the payment were very substantial donations or loans to help finance Soimach's "charitable" functions.  Dkt. 38-6 at 6-7. Additionally, Plaintiff's qualification of the term "charitable" by adding "in nature" creates a significant degree of ambiguity which, given Plaintiff's apparent lack of knowledge, further supports the need for Soimach's full compliance with the subpoena.  Such unexplained inconsistencies demonstrate Defendant's pursuit of Plaintiff's responses was more than justified notwithstanding Defendant chose to take Plaintiff's deposition without them.  Such a choice in litigation strategy, especially given the relatively short discovery period the parties had requested, provides no justification for the failure by Plaintiff, as the responding party, to serve timely discovery responses, and Plaintiff provides no authority for this notion.  Plaintiff's reliance on Defendant's decision to pursue, particularly given Plaintiff's difficulty at his deposition in even recalling the payments, also runs afoul of Fed.R.Civ.P. 26(d)(3)(A) which permits discovery motions to "be used in <u>any</u> sequence." (underling added).

3.      <u>Motion to Amend First Amended Scheduling Order</u>.

        Defendant also requests the court provide a further enlargement of time to complete discovery including Soimach's compliance with Defendant's subpoena and to file dispositive motions, which had been due April 12, 2021 under the Amended Scheduling Order (Dkt. 45 ¶ 6).  Plaintiff has not responded to this request.  Given the

several issues presented by Plaintiff's and Defendant's motions and the amount of time required for the court's disposition thereof, there is good cause for Defendant's request. Accordingly, Defendant's request (Dkt. 45) is GRANTED.  The parties shall submit, jointly or separately, a proposed Second Amended Scheduling Order within 10 days of this Decision and Order for the court's consideration.

4.      Defendant's Request to Order Soimach's Compliance with the Subpoena.

Defendant requests (Dkt. 38 at 11; Dkt. 45 at 6) that in addition to denying Plaintiff's motion, the court direct Soimach comply with the subpoena.  However, there is no motion to compel Soimach's compliance before the court filed by Defendant. Accordingly, Defendant's request is DISMISSED without prejudice to filing such motion with service upon Soimach.


**CONCLUSION**

Based on the foregoing, Plaintiff' motion (Dkt. 35) is DENIED; Defendant's motion (Dkt. 36) is GRANTED; Plaintiff's request (Dkt. 39 at 7) for expenses incurred in connection with Plaintiff's opposition to Defendant's motion is DENIED; Defendant's Request to Amend First Amended Scheduling Order (Dkt. 45) is GRANTED.

Plaintiff shall show cause not later than 20 days from this Decision and Order why Defendant's expenses incurred in connection with Defendant's motion pursuant to Rule 37(a)(5)(A) should not be granted and why Defendant should not be awarded sanctions (Dkt. 38 at 10-11) based on Plaintiff's motion as frivolous pursuant to § 1927. Defendant's responses shall be filed not later than 10 days thereafter; any reply may be filed not later than five days thereafter; oral argument shall be at the court's discretion.

The Clerk of Court shall serve a copy of this Decision and Order upon Soimach

Rely and Support, LLC, at 11 Nicklesburg Road, Apt. 112, Monroe, New York, 10950.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  April 30th, 2021
        Buffalo, New York