UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATATIAOU ERGAS, individually and on
behalf of all others similarly situated,

                              Plaintiff,

      v.                                                      **DECISION AND ORDER**

                                                                  20-CV-333S

EASTPOINT RECOVERY GROUP, INC. and
UNITED HOLDINGS GROUP, LLC,

                              Defendants.


## I.      Introduction

      This is a Fair Debt Collection Practices Act[1] ("FDCPA" or "the Act") class action.

Plaintiff alleges that Defendant Eastpoint Recovery Group, Inc. ("Defendant" or

"Eastpoint") sent him a dunning letter in August 2019 (or the "dunning letter") claiming

that Plaintiff owed almost $9,700 (mostly for charitable donations paid by credit card) to

an entity Plaintiff did not recognize as his creditor, Defendant United Holdings Group, LLC

(or "UHG") (Docket No. 11, Am. Compl.).  Because of this misidentification, Plaintiff claims

the dunning letter violated several provisions of the FDCPA and purportedly committed

these same violations against similarly situated New Yorkers (id.).  He commenced this

class action against Defendants for the FDCPA violations (id.).

      Before this Court are the parties' respective Motions for Summary Judgment

(Docket Nos. 52 (Defendant Eastpoint), 53 (Plaintiff)).

---

[1]15 U.S.C. ch. 41, subch. V, §§ 1692 to 1692p.  References to specific sections of this Act may be
by section number only.

For the reasons stated below, Eastpoint's Motion for Summary Judgment (Docket No. 52) is granted (for lack of standing and dismissal of class allegations) and Plaintiff's Motion (Docket No. 53) is denied.  This case is dismissed.

## II.    Background

### A.  Complaint

On or about March 20, 2020, Plaintiff sued Eastpoint and JTM Capital Management, LLC (Docket No. 1).  After JTM Capital Management moved to dismiss (Docket No. 9), Plaintiff filed and served an Amended Complaint (Docket No. 11).  There, Plaintiff sued Eastpoint and UHG, terminating JTM Capital Management as a Defendant (id.).

Defendants alleged "an obligation of Plaintiff to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes" (Docket No. 11, Am. Compl. ¶¶ 27, 28).  Plaintiff alleged that it was a "debt" as defined by FDCPA (id. ¶ 30).  This debt was assigned or transferred and was in default when assigned (id. ¶¶ 31-32).

Defendants contacted Plaintiff on the debt on August 4, 2019 (id. ¶ 33, Ex. 1).  This letter from Eastpoint stated that the original creditor was Pentagon Federal Credit Union ("PenFed") and United Holdings Group as "current creditor" (id., Ex. 1).  The letter alleged $9,691.08 was due (id.).

Plaintiff alleges that 15 U.S.C. § 1692g protects his interests "to receive a clear, accurate and unambiguous validation notice, which allows a consumer to confirm that he or she owes the debt sought to be collected by the debt collector" (id. ¶ 38).  Section

2

1692e protects Plaintiff's interests "to be free from deceptive and/or misleading communications from Defendants" (id. ¶ 39).

The Amended Complaint alleges four counts and a class allegation (id. ¶¶ 41-122, 123-29). The First Count alleges Defendants violated 15 U.S.C. § 1692g(a)(1) because the amount of the debt was not owed to Defendants (id. ¶¶ 42-50). The Second Count alleges violations of §§ 1692e, 1692e(2)(A), 1692e(10) because Defendants claimed a debt from Plaintiff it did not possess (id. ¶¶ 52-74). Plaintiff here denies owing $9,691.08 (id. ¶¶ 63, 64). The Third Count claims violation of § 1692g(a)(2) because UHG did not own the debt and was not the correct name of the creditor (id. ¶¶ 76-90). The Fourth Count also alleges violation of §§ 1692e, 1692e(2)(A), 1692e(10) because the letter erroneously claimed UHG owned the debt (id. ¶¶ 92-122, 103-11).

In the original (Docket No. 1, Compl. ¶¶ 123-29) and Amended Complaints, Plaintiff also sued for a purported class of all others similarly situated New Yorkers (e.g., Docket No. 11, Am. Compl. ¶¶ 123-29). Plaintiff alleges that Defendants (within one year of the pleading) sent similar collection letters for debts not actually owed to them to this class of all such New York consumers (id. ¶ 124).

B. Facts

Each party submitted a Statement of Undisputed Facts (Docket Nos. 52 (Defendant), 53 (Plaintiff)) and responses thereto (Docket Nos. 56 (Plaintiff's Response), 57 (Defendant's Response)). Plaintiff filed a statement of additional facts (Docket No. 56, Pl. Response ¶¶ 36-41) and Defendant responded to Plaintiff's additional facts (Docket No. 60).

Generally, the parties accept the facts as recounted by their opponent, with Plaintiff disputing the materiality of certain facts asserted by Defendant while conceding some of them (Docket No. 56, Pl. Response ¶¶ 1-4, 7-8, 11-18, 24-28, 30, 34-35).  Pursuant to this Court's Local Civil Rule 56(a)(1) and (2), this Court accepts the agreed upon facts and notes material disagreements and draws from both sides' Statements.

As summarized by Defendant (Docket No. 52, Def. Memo. at 14; Docket No. 57, Def. Memo. at 3 n.2), Plaintiff claims that UHG did not extend credit to Plaintiff, he was never involved in a transaction with UHG, Plaintiff never contracted with UHG, Plaintiff never transacted business with UHG, and Plaintiff is a stranger to UHG (see Docket No. 11, Am. Compl. ¶¶ 82-89, 104-11).  Plaintiff therefore claims he does not owe a debt to UHG and Defendant's letter to Plaintiff misidentifying UHG as current creditor violates FDCPA, 15 U.S.C. §§ 1692g(a)(1), 1692g(a)(2), 1692e, 1692e(2)(A), and 1692e(10) (Docket No. 52, Def. Memo. at 14; Docket No. 57, Def. Memo. at 3 n.2; see generally Docket No. 11, Am. Compl.).

In 2018, Plaintiff opened a Visa credit card account with PenFed (Docket No. 53, Pl. Statement ¶ 2; see Docket No. 52, Def. Statement ¶ 1).  Plaintiff claims he used this card only for personal expenses, such as purchasing eyeglasses for himself and his children, paying synagogue dues, and making charitable donations to Soimach Rely and Support ("Soimach") (Docket No. 56, Pl. Memo. at 2; Docket No. 53, Def. Statement ¶¶ 2-3).  Defendant argues that considering charitable donations to be debts under the FDCPA is a legal conclusion rather than a statement of fact (Docket No. 57, Def. Response ¶ 3).

Defendant stated that, on February 21, 2018, Plaintiff paid $4,500 to Soimach from his Visa account (Docket No. 52, Def. Statement ¶¶ 3-4; but cf. Docket No. 56, Pl.

Response ¶¶ 3-4 (materiality objection)).   Plaintiff argues that the nature of these transactions is not relevant to the subsequent collection effort and the alleged violations of the FDCPA (Docket No. 56, Pl. Response ¶¶ 3-4).   Both sides acknowledge that the payment to Soimach was charitable (Docket No. 52, Def. Statement ¶¶ 5-6).   Plaintiff made a second, charitable donation to Soimach on February 22, 2018, for the same amount (id. ¶¶ 8-10; but cf. Docket No. 56, Pl. Response ¶ 8 (materiality objection)). Defendant listed other transactions Plaintiff made on the Visa account in February 2018 (Docket No. 52, Def. Statement ¶¶ 13-16; but cf. Docket No. 56, Pl. Response ¶¶ 13-16).

Plaintiff began to fall behind on payment of his PenFed Visa account and PenFed purportedly transferred or otherwise placed it with Eastpoint for collection (Docket No. 56, Pl. Memo. at 2; Docket No. 53, Pl. Statement ¶ 4).

The parties agree that Defendant sent Plaintiff the dunning letter dated August 4, 2019 (e.g., Docket No. 52, Def. Statement ¶¶ 19-20).   This collection letter identified PenFed as the original creditor and UHG as the "current creditor" (Docket No. 56, Pl. Memo. at 3; Docket No. 53, Pl. Statement ¶¶ 11-12, 17).

Plaintiff recognized PenFed as a creditor but not the name of the "current creditor," UHG (Docket No. 53, Pl. Statement ¶ 13).   He claims that he became confused by the dunning letter because he did not know who or what UHG was, and he was concerned that the letter was a scam (id. ¶¶ 14, 15, 16; Docket No. 52, Def. Statement ¶ 21).   Plaintiff never thought he owed either Defendant (Docket No. 52, Def. Statement ¶ 22).

Defendant contends that Plaintiff did not call either Defendant upon receipt of the letter (Docket No. 52, Def. Statement ¶¶ 27-28).   Plaintiff does not dispute that he did not call but he questions the materiality of this fact (Docket No. 56, Pl. Response ¶¶ 27-28).

Plaintiff later testified that he suffered emotional distress from receiving the dunning letter because he thought it was a scam (Docket No. 52, Def. Statement ¶ 29; Docket No. 52, Def. Atty. Decl. Ex. C, Pl. Dep. Tr. at 42-43; see also Docket No. 56, Pl. Response ¶ 31). Plaintiff does not dispute that he did not seek medical attention for his emotional distress, but he disputes the materiality of that fact (Docket No. 56, Pl. Response ¶ 30; cf. Docket No. 52, Def. Statement ¶ 30; Docket No. 52, Def. Atty. Decl. Ex. C, Pl. Dep. Tr. at 43). Plaintiff concedes that he made purchases with the Visa account and that he has no documents of actual damages he suffered but he disputes the materiality of these facts (Docket No. 56, Pl. Response ¶¶ 34, 35).

C. Proceedings and Motions for Summary Judgment (Docket Nos. 52, 53)

Eastpoint answered on June 2, 2020 (Docket No. 15). The Court Clerk entered default judgment against UHG on November 19, 2020 (Docket No. 27).

Plaintiff later moved for a protective Order or to quash a subpoena on non-party Soimach Rely and Support LLC (Docket No. 33). Counsel argued this Motion before Magistrate Judge Foschio on March 25, 2021 (Docket Nos. 42, 58 (transcript)). Plaintiff later argues that Defendant's arguments there were disingenuous, referring to Magistrate Judge Foschio's question during oral argument to defense counsel whether Defendant was "playing games here" (Docket No. 59, Ex., Mar. 25, 2021, Tr. at 31; Docket No. 59, Pl. Reply Memo. at 1). On April 30, 2021, Magistrate Judge Foschio denied the Motion for a protective Order and to quash (Docket No. 47; Ergas v. Eastpoint Recovery Group, No. 20CV333, 2021 WL 1711321 (W.D.N.Y. Apr. 30, 2021) (Foschio, Mag. J.)).

The Second Amended Scheduling Order required motions to certify the class be filed by September 30, 2021 (Docket No. 49). That scheduling Order also set a dispositive

motions deadline for October 15, 2021 (id.).  Plaintiff did not move to certify the putative class.

The parties did file timely Motions for Summary Judgment (Docket Nos. 52[2], 53[3]).  Responses to these Motions were due by November 15, 2021, and replies by November 29, 2021.  After timely responses and replies (Docket Nos. 56, 57, 59, 60), both Motions were deemed submitted without oral argument.

### III.   Discussion

#### A.  Applicable Standards

##### 1.  Motion for Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed.

---

[2]In support of its Motion, Defendant Eastpoint submits its Statement of Undisputed Facts; the Declaration of Gina Gugliuzza, compliance manager of Eastpoint, with exhibits; Defense Attorney's Declaration, with exhibits; its Memorandum of Law, Docket No. 52.  It replied with a Reply Memorandum and Responses to Plaintiff's Statement of Additional Facts in Dispute, Docket No. 60.
    In opposition (in addition to his Motion for Summary Judgment, Docket No. 53), Plaintiff submits his Declaration; his Response to Defendant's Rule 56.1 Statement; and Memorandum of Law, Docket No. 56.

[3]In support of his own Motion for Summary Judgment, Plaintiff submits his Statement of Undisputed Facts, with exhibits; Plaintiff's Declaration; and his Memorandum of Law, Docket No. 53.
    In opposition, Defendant submits its Memorandum and its Response to Plaintiff's Statement of Undisputed Facts, Docket No. 57, in addition to his Motion for Summary Judgment, Docket No. 52.
    Plaintiff replied with his Reply Memorandum and exhibit, Docket No. 59.

R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249. "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's

statement, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

### 2.  Fair Debt Collection Practices Act

The purpose of the FDCPA was to avoid the "abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a).  The FDCPA is remedial in nature thus is construed liberally, Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013) (quotation omitted); Macris v. Specialized Loan Servicing, LLC, No. 17CV361, at *8 (W.D.N.Y. July 20, 2021) (Skretny, J.).

Plaintiff must prove that he is a consumer who allegedly owes a debt, that Defendant collecting the debt is considered a "debt collector," and the Defendant engaged in an act or omission in violation of the Act, see Schuh v. Druckman & Ginel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010).

The Act also is violated by failure to validate a debt, § 1692g.  Among items required for notice of a debt,

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> > (1) the amount of the debt;
> > (2) the name of the creditor to whom the debt is owed; . . .

15 U.S.C. § 1692g(a)(1)-(2).

Section 1692e "is violated when a debt collector uses 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,'" Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 24 (2d Cir. 1989) (quoting 15 U.S.C. § 1692e).

Section 1692e lists false or misleading representations that violate FDCPA, such as under § 1692e(2), a false representation of the character, amount, or legal status of the debt, 15 U.S.C. § 1692e(2)(A), or communicating or threatening the use of false representation or deceptive means to collect any debt, § 1692e(10).

"Because the Act focuses on the collection of 'debts,' the statutory definition of that term plays a central role in delineating the scope and reach of the Act," What Constitutes "Debt" for Purposes of Fair Debt Collection Practices Act (15 U.S.C.A. § 1692a(5)), 159 A.L.R. Fed. 121 (2000).  Section 1692a defines a key concept, the debt, 15 U.S.C. § 1692a(5) (emphasis added).

> (5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

### 3.  Standing and Injury-in-Fact Standard

This Court must consider a threshold issue whether, pursuant to Article III, Plaintiff has constitutional standing to assert his FDCPA claims, see Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining District Court's jurisdiction to hear case); Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 80 (2d Cir. 2018).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).  Article III standing requires Plaintiff to demonstrate injury-in-fact, a "causal connection" between that injury and Defendant's conduct, and a likelihood "that the injury will be redressed by a favorable decision," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)

(internal quotation marks omitted).  Plaintiff bears the burden of demonstrating his standing, id. at 561.  As recently stated by the Supreme Court, "to have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm," TransUnion LLC v. Ramirez, 594 U.S. ___, 141 S.Ct. 2190, 2200, 210 L.Ed.2d 568 (2021).

The Court in TransUnion held that, although Congress creates causes of action for violation of legal prohibitions or obligations, "under Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court," id., 141 S.Ct. at 2205 (emphasis in original) (see Docket No. 52, Def. Memo. at 6).  As summarized in that decision, "no concrete harm, no standing," id. at 2200, 2214.

B.  Parties' Contentions

In general, Plaintiff argues that Defendant violated the FDCPA by claiming that UHG owned Plaintiff's debt when it did not.

Defendant counters, first, that Plaintiff lacks standing to assert FDCPA claims.  Second, Defendant challenges whether most of the Plaintiff's debt, donations to Soimach, are "debts" protected from adverse collection activities under the Act.  Third, Defendant claims it complied with FDCPA and Plaintiff has not alleged any injury from its single dunning letter.

1.  Plaintiff's Motion (Docket No. 53)

Plaintiff argues that Defendants misstated the identity of the current creditor in a single dunning letter, violating 15 U.S.C. § 1692g (among other provisions of the Act) (Docket No. 53, Pl. Memo. at 5).

Defendant responds incorporating its arguments from its Motion for Summary Judgment that Plaintiff lacks Article III standing to sue, that the charitable donation is not a "debt" under the FDCPA, and Plaintiff has not established Defendant violated the Act (Docket No. 57, Def. Memo. at 2-3, 5-9).  Defendant denies that Plaintiff's claim was for the incorrect identification; instead, Plaintiff really alleged that he thought Defendant's letter was a scam (id. at 5-6).

### 2.   Defendant's Motion (Docket No. 52)

Focusing on procedural aspects of Plaintiff's claims, Defendant argues that Plaintiff lacks standing to sue under FDCPA.  Plaintiff has not alleged suffering an injury-in-fact to warrant standing.  (Docket No. 52, Def. Memo. at 4-8, 8-9.)  In addition to out of circuit cases cited as precedent (id. at 5), Defendant cites the Eastern District of New York's decision in In re FDCPA Mail Vendor Cases, 551 F. Supp.3d 57 (E.D.N.Y. 2021), which held that the plaintiffs there failed to allege any harm arising from receipt of letters from mail vendors to have standing (id. at 6-7).  Decided after TransUnion, the district court there denied that there was any harm from the mere receipt of the letters, concluding that claims of emotional distress by itself were not sufficient to state an injury-in-fact, In re FDCPA Mail Vendor Cases, supra, 551 F. Supp.3d at 58, 62, 65 (id. at 7).  If there was any injury suffered here, Eastpoint concludes that it is not traceable to the claim against it (Docket No. 60, Def. Reply Memo. at 5-6).

Eastpoint asserts that Plaintiff also cannot claim stress arising from this action as injury-in-fact (id. at 7).   After TransUnion, another district court held that "it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury," Kola

v. Forster & Garbus LLP, No. 19CV10496, 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021).

Defendant concludes that Plaintiff's allegation of emotional distress fails to state an injury-in-fact for standing (id. at 8-9).

Next, Defendant argues that the debt here for charitable contributions (paid for by a credit card) is not one covered by FDCPA for "primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(4), (5) (id. at 9-14), Beauvoir v. Israel, 794 F.3d 244, 247 (2d Cir. 2015); Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998), adopting, 994 F. Supp. 114 (D. Conn. 1997).  Defendant argues that if the debtor "received nothing in return for the debt, it falls outside of" the FDCPA (Docket No. 52, Def. Memo. at 10).

Finally, Defendant denies violating the terms of the FDCPA (Docket No. 52, Def. Memo. at 14-16).

Plaintiff responds that Defendant's Motion should be denied, reiterating his arguments that Defendant named the wrong creditor in violation of the FDCPA (Docket No. 56, Pl. Memo. at 5).  Plaintiff claims standing because he suffered harms from the dunning letter that gave him an injury-in-fact (id. at 5, 8-13).  Plaintiff distinguishes non-Circuit cases as lacking precedential value (id. at 9).  He relies upon Cohen v. Rosicki, Rosicki & Associates, P.C., 897 F.3d 75 (2d Cir. 2018), as Second Circuit precedent that held a consumer has standing to assert a claim that a collector misidentified a creditor (id. at 10).  He also relies upon Maddox v. Bank of New York Mellon Tr. Co., N.A., 997 F.3d 436 (2d Cir.), withdrawn, 4 F.4th 58 (2d Cir. 2021) (id.; but cf. Docket No. 60, Def. Reply Memo. at 2).  Defendant replies, however, that the superseding decision in Maddox was rendered after the Supreme Court's decision in TransUnion and the Second

Circuit held that "[n]o concrete harm; no standing," 4 F.4th at 62 (quoting <u>TransUnion</u>, <u>supra</u>, 141 S.Ct. at 2200) (Docket No. 60, Def. Reply Memo. at 3).

Plaintiff argues that the Southern District of New York in <u>Kola</u> noted other decisions in this Circuit that held that a collection letter with fraudulent misrepresentations can form the basis for concrete injury for standing (Docket No. 56, Pl. Memo. at 11), 2021 WL 4135153, at *6.  Defendant replies, however, that this reliance is misplaced; that the court in <u>Kola</u> rejected comparison of the misstatement in the notice to that plaintiff to common-law fraud, <u>id.</u> (Docket No. 60, Def. Reply Memo. at 4).

Plaintiff then points out that Defendant has not shown a case where the obligation to repay a charge used to make a charitable donation was not a "debt" under the FDCPA, conceding this issue was one of first impression (<u>id.</u> at 5-6,13-15).  He again concludes that Defendant violated provisions of the FDCPA (<u>id.</u> at 15-16).

* * *

This Court first addresses Plaintiff's class allegations, then whether Plaintiff has asserted an injury-in-fact for constitutional standing to assert his FDCPA claims.  If he did, this Court next considers Defendant's arguments that there was no FDCPA debt in this case.  Finally, if necessary, this Court considers Plaintiff's Motion for Summary Judgment on the merits of his claims.

### C.  Class Certification

Plaintiff did not file a motion to certify the putative class (<u>cf.</u> Docket No. 49, Second Amended Scheduling Order).  The class allegations are thus abandoned (<u>see</u> Docket No. 52, Def. Memo. at 2 n.1), <u>Tataru v. RGS Fin., Inc.</u>, No. 18-cv-06101, 2021 WL

14

1614517, at *1, 4 (N.D. Ill. Apr. 26, 2021) (on reconsideration, vacating class certification after finding lack of subject matter jurisdiction on standing grounds).

>  D.  Standing and Injury-in-Fact

>   1.  Tangible Harm

"'No concrete harm; no standing.'  TransUnion, 141 S.Ct. at 2200.  This equation, which opens the Supreme Court's TransUnion decision, leaves little room for interpretation and may be sufficient to resolve the issue before" this Court, Maddox, supra, 19 F.4th at 62.  Plaintiff cannot "allege a bare procedural violation divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III," Spokeo, supra, 578 U.S. at 341; Summers v. Earth Is. Inst., 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ("a procedural right in vacuo—is insufficient to create Article III standing").

Before TransUnion, the Second Circuit held that a consumer has Article III standing to assert a claim for misidentification of a creditor in violation of the FDCPA because §§ 1692g and 1692e protect the consumer's concrete interests, "so than an alleged violation of these provisions satisfies the injury-in-fact requirement of Article III," Cohen, supra, 897 F.3d at 81; see Maddox, supra, 997 F.3d 436, withdrawn, 4 F.4th 58; Kola, supra, 2021 WL 413153.  The Second Circuit in the first Maddox decision reaffirmed Cohen, finding its discussion on standing in FDCPA cases "especially instructive," Maddox, supra, 997 F.3d at 451-52.  The Second Circuit withdrew this first decision, 4 F.4th 58.  Cohen thus is no longer good law.

After TransUnion and its requirement of an injury-in-fact arising from the statutory violation for standing, see Maddox, supra, 19 F.4th at 64; TransUnion, supra, 141 S.Ct.

15

at 2214, the consumer to have standing needs to establish harm from that violation (see Docket No. 60, Def. Reply Memo. at 2).   Therefore, the issue is whether Plaintiff established suffering from concrete harm (including emotional injury) due to Defendant's dunning letter.  As held by the Second Circuit in Maddox, supra, 19 F.4th at 64, Plaintiff has not.

As in one of the FDCPA Mail Vendor Cases, the dunning letter Plaintiff received identified the original creditor, PenFed (which Plaintiff acknowledges knowing).  Plaintiff's conclusion that he does not owe the debt does "not seem facially plausible" given identification of the original creditor.  551 F. Supp.3d at 65.  And as in the Eastern District of New York case, Plaintiff here has not shown a concrete injury-in-fact from a violation of misidentification of the current creditor even if it might have misled the least sophisticated consumer, id. at 66.

Alleging notices "as constituting informational violations of the statute, without alleging any harm, such efforts do not confer standing," id., citing TransUnion, supra, 141 S.Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III,'" citation omitted).  This may be an injury in law but, absent a concrete injury-in-fact from those violations, Plaintiff lacks standing to sue under the FDCPA.

Instructive here and like Ergas' claims is the Northern District of Illinois' case, Tataru v. RGS Financial, Inc., No. 18-cv-06106, 2021 WL 1914517 (N.D. Ill. Apr. 26, 2021).  In Tataru, plaintiff Gabriel Tataru alleged that he received a dunning letter that misidentified his creditor (stating an entity that did not exist), in violation of § 1692g(a), id. at *1; see also Tataru, 2021 WL 38142, at *1 (N.D. Ill. Jan. 4, 2021), vacated by 2021 WL

1914517.   The United States District Court for the Northern District of Illinois at first granted Tataru summary judgment, 2021 WL 38142.  The court initially held that Tataru had standing from suffering "an informational injury," Tataru, supra, 2021 WL 1614517, at *1 (citing Spokeo, supra, 578 U.S. at 341-42, 136 S.Ct. at 1549 ("An information injury occurs when the defendant refuses to provide the plaintiff with information that a law . . . entitles him to obtain and review for substantive purpose . . . [i]n such cases, a plaintiff need not allege any additional harm beyond his failure to receive information that the law renders subject to disclosure," emphasis in original, cleaned up)).  The court held that Tataru's claim that the misnamed creditor in the dunning letter "caused him concrete harm" because this misidentification of the creditor went "to the heart of what Congress sought to protect in § 1692g(a)," Tataru, supra, 2021 WL 38142, at *3.  The court then believed that this informational injury was concrete for standing because it impaired Tataru's ability to use the creditor's identity "'for a substantive purpose that the statute envisioned,'" id. (quoting Robertson v. Allied Solutions, LLC, 902 F.3d 690, 693 (7th Cir. 2018)).

The Seventh Circuit then ruled in a series of decisions that debtors claiming FDCPA violations must show that the statutory violation "caused them to take a detrimental step resulting in a mishandling of their debt," Tataru, supra, 2021 WL 1614517, at *1, 2 (citing Seventh Circuit cases) (see also Docket No. 52, Def. Memo. at 5).  Tataru stated that the letter caused him confusion but "none of his confusion prompted him to take any action to his detriment," id.  Upon reconsideration after these appellate decisions, the Northern District of Illinois concluded, absent any evidence "that Mr. Tataru suffered a concrete injury as a result of the dunning letter at issue in this case, the Seventh

Circuit's teaching requires a finding that Mr. Tataru lacks standing to press his claim that the letter violated the FDCPA," id.  The court reiterated that concrete injury for standing need not be tangible, "but plaintiffs cannot merely point to a 'bare procedural violation, divorced from any concrete harm,'" id. at *2, quoting Spokeo, supra, 578 U.S. at 341. Seventh Circuit law required the plaintiff to show "that the statutory violation caused them to take some detrimental step and mishandle their debt," id. citing, e.g., Spuhler v. State Collection Servs., Inc., 983 F.3d 282, 286 (7th Cir. 2020).  The court rejected its earlier understanding that a statutory violation of the FDCPA that posed "a threat to the interests Congress sought to protect as concrete harms" created standing, id. at *3.

There, Tataru did not adduce evidence that he mishandled his debt because he received the dunning letter that may have misidentified the creditor, id. at *3.  Tataru merely claimed that the letter caused him to suspect fraud, id.  Seventh Circuit precedent made clear that "the state of confusion is not itself an injury," id., citing Brunett v. Convergent Outsourcing, Inc., 982 F.3d 1067, 1068 (7th Cir. 2020) (see Docket No. 52, Def. Memo. at 5).  The Northern District of Illinois held that

> "Tataru needed to do more than demonstrate a threat that he would fail to exercise his rights because he deemed the letter a scam—he must have actually failed to exercise those rights and suffered some tangible adverse consequence as a result.  For example, Tataru could have suffered a concrete injury if, because he suspected the letter was from a scammer, he delayed taking action on the debt and was then charged more interest as a result,"

Id.  The fear of fraud or confusion about the dispute process did not assert an injury-in-fact to provide standing under Article III, id.

While Tataru rests upon Seventh Circuit precedent (some cited by Defendant here over Plaintiff's objection, compare Docket No. 52, Def. Memo. at 5 with Docket No. 56,

Pl. Memo. at 8-9), they (like <u>Tataru</u>) predate the Supreme Court's more recent iteration of standing in <u>TransUnion</u>.  The Northern District of Illinois' second, vacating decision is consistent with <u>TransUnion</u> and its requirement that the plaintiff to have standing needs a distinct injury-in-fact arising from the statutory violation, there a concrete consequence from the alleged scam or misidentification of the creditor.

Ergas in this case took no action upon receipt of the dunning letter with the unfamiliar creditor.  He does not claim he refused to act because of the defect in the letter to his later detriment, <u>cf.</u> <u>Tataru</u>, <u>supra</u>, 2021 WL 1614517, at *3.  He denies suffering actual damages from the purported error in the dunning letter, <u>see</u> <u>In re FDCPA Mail Vendor Cases</u>, <u>supra</u>, 551 F. Supp.3d at 58, 65.  His only claimed injury is emotional distress from receipt of the letter.

Plaintiff here merely alleges violations of the FDCPA which alone does not state an injury-in-fact for Article III standing.

### 2.  Emotional Distress as Concrete Injury-in-Fact

Plaintiff merely complains of the inaccurate identification of the current creditor in a dunning letter addressed only to him.  While this misidentification may have been an injury at law, Plaintiff fails to allege a factual injury arising therefrom.  Plaintiff did not suffer actual damages from the misidentification.  He did not contact either Defendant about the dunning letter.  Plaintiff believed that this letter was a scam and generally ignored it.

Plaintiff's sole alleged harm is his emotional distress from receipt of the dunning letter, concerned that it was a scam rather than misidentifying his creditor (<u>but cf.</u> Docket No. 60, Def. Reply Memo. at 4 (allegation unrelated to alleged FDCPA violation)).  He does not allege any risk of future harm that could cause emotional harm, <u>Maddox</u>, <u>supra</u>,

19 F.4th at 65; cf. TransUnion, supra, 141 S.Ct. at 2211 n.7.   Whether this was an attempted scam is not a violation of the FDCPA, see Gardner v. Credit Management LP, 140 F. Supp.3d 317, 323 n.3 (S.D.N.Y. 2015) (noting the court in Douglass v. Convergent Outsourcing, 765 F.3d 299, 305 (3d Cir. 2014), had a fixation on "susceptibility" of tracking number to "privacy intrusions" that may have conflated the FDCPA with other statutes that target identity theft); Beck v. McDonald, 848 F.3d 262, 272 (4th Cir. 2017) (rejecting plaintiffs' claims that emotional upset and fear of identity theft are adverse effects sufficient to confer Article III standing).

Plaintiff cites cases holding that emotional distress may be an injury-in-fact, Haynes v. Transunion, LLC, No. 19CV7157, 2021 WL 3185581, at *3-4 (E.D.N.Y. July 28, 2021) (Motion to Dismiss in Fair Credit Reporting Act[4] and FDCPA action); Magruder v. Capital One, Nat'l Ass'n, 540 F. Supp.3d 1, 7 (D.D.C. 2021) (in FCRA and FDCPA action, holding that intangible harm can be injury-in-fact); Ricketson v. Experian Info. Sols., Inc., 266 F. Supp.3d 1083, 1090-91 (W.D. Mich. 2017) (FCRA) (Docket No. 56, Pl. Memo. at 12).   These three cases alleged violations of FCRA which inherently includes disclosure of plaintiffs' credit to third parties despite the accuracy of the reports.

In Magruder, the court also observed that "free-standing 'emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.'   Humane Soc. of U.S. v. Babbitt, 46 F.3d 93, 98 (D.C. Cir. 1995) (quotation marks omitted)," Magruder, supra, 540 F. Supp.3d at 8.   That court concluded that the emotional injury allegations were "unsound as a matter of law," id.   For the order to show cause there why the case should not be dismissed on standing grounds at the pleading stage, the court

---

[4]15 U.S.C. ch. 41, §§ 1681-1681x, "FCRA."

concluded that the allegations nevertheless sufficiently alleged standing, id. at 3, 9.  The court applied the analysis for standing under FCRA claims to plaintiff's FDCPA claim, id. at 12.

The Magruder court assessed whether emotional harm satisfied Article III injury-in-fact consistent with the history and judgment of Congress as applied to the FCRA, id. at 9 (quoting Spokeo, supra, 578 U.S. at 340), 10.  The court concluded that intangible injuries from inaccurate credit reporting "fit neatly within the types of harms that Congress sought to abate," id. at 10, see id. at 10-12.  The court then used the same analysis for the FDCPA and came to the same result, id. at 12-14.  "Although a close question, the Court concludes that Magruder's allegations are sufficient—at this early stage of the litigation—to establish standing based on intangible injury," id. at 13.  The Magruder court held that it was "premature to determine what Magruder will need to show at the next stage of litigation.  Even if some greater showing of emotional injury is indeed required at summary judgment," id. at 14.  The court concluded that the issue of the ultimate sufficiency of the claimed harm loomed, id.

As in Magruder, id. at 8, Plaintiff here has not alleged tangible harm such as economic damages or loss of credit.  Unlike that case, this is not a Motion to Dismiss or a challenge to the sufficiency of the Complaint, see id. at 9.  These are Motions for Summary Judgment following discovery and based upon the evidentiary record produced to support the Motions.  Plaintiff needs to establish the lack of material issue of fact that he suffered an injury-in-fact from the dunning letter, see Frank v. Autovest, LLC, 961 F.3d 1185, 1188 (D.C. Cir. 2020) (plaintiff failed to establish standing at summary judgment where she merely testified to experiencing stress and inconvenience but failed to connect

those harms to defendants' statutory violations), <u>cited in</u> <u>Magruder</u>, <u>supra</u>, 540 F. Supp.3d at 15.

The present case here is at the summary judgment stage and requires proof of injury-in-fact beyond the sufficiency of Plaintiff's allegations of an injury.  Plaintiff states in his responding Declaration that his stress came from not knowing how his personal information was learned by Defendant (Docket No. 56, Pl. Decl. ¶¶ 11, 13).  Plaintiff did not seek medical attention for the emotional distress he suffered (Docket No. 52, Def. Statement ¶ 30; <u>cf.</u> Docket No. 56, Pl. Response ¶ 30); failure to seek medical treatment is material in establishing the extent of Plaintiff's injury (in any) from the emotional distress.  Plaintiff explains that he worried and had "great . . . apprehension after" receiving the dunning letter (Docket No. 56, Pl. Decl. ¶ 13).  Plaintiff has not established that he suffered an injury-in-fact from his emotional distress arising from the dunning letter.

Plaintiff's present allegation also fails to state fraud (the analogous common law tort for Plaintiff's alleged emotional injury) that would provide a sufficient injury-in-fact for standing, <u>In re FDCPA Mail Vendor Cases</u>, <u>supra</u>, 551 F. Supp.3d at 65; <u>Kola</u>, <u>supra</u>, 2021 WL 4135153, at *6.

Plaintiff's alleged emotional distress does not allege concrete harm for an injury-in-fact or standing, <u>see</u> <u>TransUnion</u>, <u>supra</u>, 141 S.Ct. at 2210 ("mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third part, causes no concrete harm").  Even if this Court disregards lower court decisions outside of this Court or the Second Circuit (as urged by Plaintiff, Docket No. 56, Pl. Memo. at 9), Plaintiff fails to allege concrete and particularized harm from receiving a dunning letter from the supposed

wrong creditor.  His distress was from the potential for identity theft, a harm not addressed by the FDCPA.  Allegation of technical violations of the FCDPA without alleging harm arising therefrom fails to allege an injury-in-fact for standing in this Court, Kola, supra, 2021 WL 4135153, at *8 (debt collector sent allegedly inaccurate amount due); see TransUnion, supra, 141 S.Ct. at 2205 (noting the difference between an injury in law and an injury-in-fact, holding the Constitution requires the latter for standing to sue).

### 3.  Alleged Emotional Harm from this Litigation

Plaintiff adds that Defendant continued to harass and intimidate him in conducting this litigation, exacerbating his emotional harm (Docket No. 56, Pl. Memo. at 12-13). Defendant is correct that post-commencement litigation activities cannot create emotional distress for an injury-in-fact allegation (Docket No. 60, Def. Reply Memo. at 7).  If emotional injury arose from prosecution of this lawsuit, it is self-inflicted (id., citing, e.g., Tolliver v. National Credit Sys., Inc., No. 20-cv-728-jdp, 2021 WL 4306056, at *4 (W.D. Wis. Sept. 22, 2021).  The anxiety from litigation (here, the claimed stress from subpoenaing Soimach, see Docket No. 56, Pl. Memo. at 12-13; Docket No. 56, Pl. Decl. ¶ 18 (alleges the subpoena to Soimach was to intimidate and embarrass Plaintiff); Docket No. 35, Pl. Memo. at 5) is distinct from an alleged harm that led to Plaintiff's suit.

Federal Rule of Civil Procedure 26(c) provided the relief from the harm of annoying or embarrassing discovery, Fed. R. Civ. P. 26(c)(1), an injury distinct from the injury claimed originally in the lawsuit.  Plaintiff here moved for a protective Order and to quash the subpoena upon Soimach (Docket No. 35), see Ergas, supra, 2021 WL 1711321, at *1.  In that Motion, Plaintiff argued that the subpoena caused embarrassment to Plaintiff and his brother (a principal of Soimach) in their "small, tightly knit religious, Jewish

Hassidic, community," id. at *2.  Part of the alleged embarrassment was revealing the existence of this action in that community, causing inquiries from members of that community, leading to harassment and embarrassment, id.

This is distinct from the harms alleged in the action itself, the distress from receipt of the dunning letter and the potential for a scam or identity theft.

### 4.  Injury-in-Fact Asserted Here

Plaintiff has not alleged tangible harm from the August 2019 dunning letter.  The emotional harm alleged is attributed to the potential for identity theft (not addressed by the provisions of FDCPA or its provisions for correct identification of creditors) and does not assert a constitutional injury-in-fact.

Thus, Defendant's Motion for Summary Judgment (Docket No. 52) is granted. Absent standing, Plaintiff cannot move for judgment in his favor (including arguing the merits of his claims under the FDCPA) and his Motion for Summary Judgment (Docket No. 53) is denied.

Next, a brief word on the other contentions raised in these Motions.

Defendant argues that if the debtor "received nothing in return for the debt, it falls outside of" the FDCPA (Docket No. 52, Def. Memo. at 10), such as making charitable donations with borrowed funds.

In denying Plaintiff's Motion for a protective Order and allowing discovery from Soimach (Docket No. 47, Ergas, supra, 2021 WL 1711321), Magistrate Judge Foschio observed that, even accepting that Plaintiff's payment to Soimach was a charitable donation, Plaintiff "would not have received in 'exchange' for such payment, Beggs, 145 F.3d at 512, ' "a rendition of a service or purchase of property or other item of value,"'

id., thereby rendering problematic whether the debt at issue in this case qualifies for protection under the FDCPA," Ergas, supra, 2021 WL 1711321, at *4.  Defendant now presents that problematic issue in its present Motion.

Whether these donations paid by borrowed funds constitutes a "debt" under § 1692a(5) is a matter of first impression.  Given Plaintiff's lack of standing to sue, however, this question will remain unanswered in this case.

Defendant's Motion for Summary Judgment dismissing these claims (Docket No. 52) is granted and Plaintiff's Motion (Docket No. 53) is denied.

## IV.    Conclusion

Plaintiff has not alleged an injury-in-fact, despite claiming emotional distress from receiving a dunning letter that supposedly misidentified his creditor.  Absent an injury-in-fact (and not the injury in law of the statutory violation), he lacks standing to sue.  Even if Plaintiff had standing, he also failed to move for class certification for others similarly situated, thus his class allegations are deemed abandoned.   Therefore, Defendant Eastpoint's Motion for Summary Judgment (Docket No. 52) is granted, and Plaintiff's Motion for Summary Judgment (Docket No. 53) is denied.  This case is closed.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 52) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 53) is DENIED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:      May 10, 2022
              Buffalo, New York


<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
